## Groy v. Sinclair Refining Company.

*William C. Rehm,* for plaintiff.
*Harris C. Arnold, K. L. Shirk* and *John A. Coyle,* for defendant.

LANDIS, P. J., July 7, 1928.—The plaintiff lived in Elizabethtown, this county, and in August, 1924, entered into the employ of the Sinclair Refining Company as its agent at that place. His contract with the company was in writing, and none of the provisions contained in the writing were questioned on this trial. He remained with the defendant company until Nov. 8, 1926, when he gave notice that he did not wish to continue with it any longer. Thereupon an auditor of the company came to Elizabethtown and audited his books. This auditor found that there was a balance due Groy of $378.47, and he took possession of all the books and papers which were then in Groy's custody. On Jan. 3, 1927, he mailed a memorandum of the commissions payable, according to the balance as ascertained to be due. All of these facts were admitted in the affidavit of defense. It was also testified that the auditor told Groy that he would receive a check for the said amount. No part of the money was ever paid by the company to Groy, and, hence, the present suit.

The defendant alleged that certain accounts—one due by A. M. Brinser for $293.95, and another by J. H. Barto for $54—should, under the contract

between Groy and the company, be deducted from the said balance found to be due to Groy, and that, therefore, the actual sum due to him was only $31.22 and interest. One of the provisions of the contract was that "the agent shall not extend credit to any customer without first securing permission in writing from the company so to do, and shall withdraw any credit so extended when so directed by the company. The agent shall be liable to the company for any loss sustained through violations of these provisions. The company is authorized, at its option, to charge the agent with the invoice value to customers of products delivered in violation of such provisions, and shall have the right to deduct and retain for its own use said invoice value from any moneys that may then be due or which thereafter may become due the agent." It was claimed on the trial that the affidavit of defense having averred that the plaintiff extended credit to the two customers above mentioned in the amounts specified, against the express orders of the defendant not to do so, this was a violation of the agency agreement, and the company had the right to deduct the amounts of these bills from Groy's balance; that this was new matter, and as it was not replied to by the plaintiff, the allegation was to be taken as conclusive against the plaintiff.

Under the Act of March 30, 1925, P. L. 84, the 6th section of the Practice Act of 1915 is amended so as to read: "Every allegation of fact in the plaintiff's statement of claim, or in the defendant's set-off or counter-claim, or new matter, if not denied specifically or by necessary implication in the affidavit of defense, or plaintiff's reply, as the case may be, or if no affidavit of defense or plaintiff's reply be filed, shall be taken to be admitted, except as against an infant, a person of unsound mind, or one sued in a representative capacity. . . ."

The written agreement was not attached to the plaintiff's statement, but it was therein averred that the plaintiff had been employed by the defendant. The affidavit of defense set forth the provisions of the written agreement as we have quoted them above. It was also stated therein that "the plaintiff extended credit to two customers, namely, J. H. Berton and A. M. Brinser . . . against the express orders of the plaintiff not to do so;" that "this was in violation of the agency agreement between the parties." J. J. Barto was the name of the person meant, instead of J. H. Berton, and the defendant evidently meant to say that this was against the orders of the defendant instead of the plaintiff. It was also asserted that the company charged the plaintiff with the invoice value of the products delivered in violation of the agreement and assigned to the plaintiff both of these accounts. The agreement, under such circumstances, did authorize the company to charge the accounts against the plaintiff, and the jury were so instructed; but there is no provision for an assignment of any such accounts, and that action on the part of the defendant's company was of no effect. We do not think that these allegations can be considered as new matter. They were a matter of defense under the agreement, so far as these credits were concerned, and the truth of their allegation was an issue of fact to be determined by the jury, even though the plaintiff had not filed a reply. We believe that the act of assembly did not cover a proposition like this and take away from the jury the determination of these facts.

It has been urged by counsel that the interpretation of the written agreement was submitted by the trial judge to the jury, and that, as the interpretation of a written instrument is for the court and not for the jury, this was error. We submit that the interpretation of any of the writings was not involved in this case. The agreement was plain and conclusive, as was stated

in the charge, upon the parties; but it was a vital point in the case whether certain persons who had given directions to Groy as to these particular claims were properly to be considered as the agents for the company, with authority to perform such acts. It was not denied that W. F. Dinkins was manager of what was called the eastern district of the company's business. On Feb. 16, 1926, he wrote a letter to Groy, at the top of which is: "Subject: J. H. Barto." Then follows: "Please be advised that approval of installation and credit have both been passed and it will be in order for you to install this equipment as soon as you are in a position to do so." On March 11, 1925, he also wrote to Groy: "With our form letter of Feb. 16th, we forwarded to you equipment rental agreement favoring the above subject account. Immediately installation has been completed, incorporate therein serial numbers of equipment installed, secure signatures of customer and property owner, have same properly witnessed and return both copies of the agreement to this office for further handling." On Jan. 30, 1926, A. C. Carr, who, it was admitted, was assistant district manager of the company, wrote to Groy, on a letterhead at the top of which were the words: "Subject: R. M. Breuser (Brinser), Route No. 1, Middletown, Pa." The letter read: "Please be advised that approval of installations and credit have both been passed and it will be in order for you to install this equipment as soon as you are in a position to do so." At the bottom of the letter is the following: "cc Mr. R. E. Spooner, Dist. Supt. Our credit department has placed a COD pending completion of investigation on the above account. Be sure this is thoroughly understood by the customer before making installation."

It was not denied that the equipment was installed or that numerous delivery receipts were forwarded to the company after that date. A number of letters were produced to show that Dinkins and Carr were acting in their respective offices for the company in making similar contracts. The fact that Thomas M. Demarest, who was called as a witness and who said he was an assistant manager of the credit department, testified on the trial that these parties had no authority in the matter was not conclusive on that point. All of the above letters and papers were for the jury and were properly, we think, submitted to them to ascertain whether Dinkins and Carr were such agents of the company as were referred to in the written agreement, and whether or not the company was bound by their action in its dealings with Groy. The jury were not permitted to construe the agreement, but they had a right to ascertain whether or not the credits were established in writing with the permission of the company so to do.

In the case of Brinser's account, it was also shown, and not contradicted, that he had paid everything that was due by him from time to time to the company. The jury, having found for the plaintiff, may be assumed to have ascertained this testimony to be true. As the plaintiff under the written agreement, even if he had extended credit without first securing permission in writing, was liable to the company only for the loss sustained by it by virtue of the violation of these provisions, if the company received the money due upon the account, then it follows that there was no loss for which the plaintiff could be held accountable.

We are of the opinion that this case was properly submitted to the jury and that the verdict was well warranted by the testimony that had been presented.

The motion for judgment *non obstante veredicto* is now overruled and the rule for a new trial is discharged. Motion overruled and rule discharged.